# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Elizabeth M. Shank,<br><br>    Plaintiff,<br><br>v.<br><br>Carleton College,<br><br>    Defendant. | Case No. 16-cv-1154 (PJS/HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Elizabeth M. Shank's ("Shank") Motion to Amend to Add a Claim for Punitive Damages ("Mot. to Amend") [Doc. No. 64], which the Court took under advisement on September 11, 2018. *See* (Am. Minute Entry Dated Sept. 11, 2018 [Doc. No. 214].) For the reasons set forth below, the Court will grant the motion.

**I. Background**

 **A. The Lawsuit**

Shank brings this action alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12181, Title IX of the Education Amendments of 1972, 2 U.S.C. § 1681 ("Title IX"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–95, the Minnesota Social Host Liability statute, Minnesota Statutes § 340A.90, and other related Minnesota state

1

law claims, including intentional infliction of emotional distress ("IIED").[1] *See* (PSAC at 2–51.[2]) Specifically, Shank alleges that Defendant Carleton College ("Carleton") failed to adequately respond to her allegations regarding two sexual assaults that she suffered at the hands of Students One and Two. *See, e.g.*, (*id.* ¶¶ 5, 86–88, 92–95, 109–10, 188–89, 191, 193–94, 213–14.) These allegations include Carleton's: (1) mishandling of the disciplinary proceedings against her assailants; (2) failure to impose adequate sanctions against her assailants; (3) failure to explain or assist with the criminal prosecution of these individuals; (4) failure to provide adequate medical assistance; (5) failure to arrange or otherwise suggest alternative housing for Shank; and (6) failure to provide academic assistance and other academic accommodations. *See, e.g.*, (*id.* ¶¶ 5, 88, 92, 93–95, 109–10, 182–83, 213–14.)

### 1. Student One

Shank was assaulted by Student One in 2011 (*Id.* ¶¶ 77–85.) Shank did not initially file a formal complaint against Student One. (*Id.* ¶ 88.) Rather, Carleton became aware that she was raped on the basis of a community-concern form that was filed against Student One, despite the fact that Shank was not specifically identified in the form. (*Id.*

---

[1] Many of these claims were dismissed by the Honorable Patrick Schiltz, United States District Judge on Carleton's Motion to Dismiss [Doc. No. 13]. *See* (Jan. 8, 2017 Order, "Schiltz Order" [Doc. No. 41].) The Court does not intend the factual recitation of the case to revive these previously dismissed claims. By the same token, in granting Shank's motion the Court does not intend to revive the dismissed claims that were included in Shank's Proposed Second Amended Complaint ("PSAC") [Doc. No. 72-3].

[2] When discussing Shank's allegations, the Court will refer to Shank's PSAC, using the CM/ECF pagination, as that is the pleading that must support her instant motion.

¶¶ 99, 106–07.) Shank was assigned a "sexual misconduct support advisor" ("SMS advisor"), whose role was to assist Shank with obtaining appropriate support and assist her during the complaint process. (*Id.* ¶ 105–06.) Shank informed her SMS advisor that she was "terrified" to file a formal complaint against Student One. (*Id.* ¶ 111.) Shank's SMS advisor suggested that Carleton file a complaint against Student One on her behalf. (*Id.* ¶¶ 113–14.) Shank agreed to this course of action. (*Id.* ¶ 114). Shank asserts this decision deprived her of significant procedural rights, including the right to appear or speak at the hearing, and the right to appeal the decision of the adjudicatory panel.[3] (*Id.* ¶¶ 128, 131, 133, 141.) The only avenue she was given in pursuing her complaint against Student One was to write a statement about the rape. (*Id.* ¶¶ 117–123, 131.)

With respect to her written statement, Shank alleges that she informed Carleton that the statement was a "draft" and that it omitted many details, including the brutality of the assault and the level of violence to which she was subjected. (*Id.* ¶ 118.) Shank informed Carleton that she needed assistance from her therapist or her SMS advisor to provide sufficient details of the act. (*Id.* ¶ 119.) Shank alleges that Carleton reviewed the draft as written, assured Shank that it was sufficient to secure a suspension or an expulsion of Student One, and submitted the statement to the panel. (*Id.* ¶ 121.)

The panel found that Student One violated Carleton's policy against sexual assault. (*Id.* ¶ 137.) As punishment, the panel issued a no-contact order prohibiting Student One from having any contact with Shank, but did not suspend or expel him. (*Id.*

---

[3] The adjudicatory panel is "comprised of one faculty member, one staff member, and one student." (*Id.* ¶ 128.)

¶¶ 138, 140.) Notwithstanding Shank's protestations that the panel lacked information regarding the incident, Shank was prevented from appealing the panel's decision because Carleton, as the initiator of the complaint, was the only party that could appeal the decision. (*Id.* ¶¶ 141–44.) Ultimately, Carleton did not appeal the panel's decision. (*Id.* ¶ 145.)

Furthermore, Carleton refused to provide Shank with written notice of the outcome of the complaint and likewise did not disclose the sanctions levied against Student One. (*Id.* ¶ 152.) Instead, Carleton informed Shank that "if she wanted to find out about the outcome of the adjudication hearing," she "would have to meet with Student One." (*Id.* ¶ 153.) Shank met with Student One in 2012. (*Id.* ¶ 166). Shank alleges that Carleton knew or should have know that this meeting was improper based on an April 4, 2011, correspondence from the Office of Civil Rights of the United States Department of Education, which states in part, "it is improper for a student who complains of harassment (this includes sexual assaults and rape) to be required to work out the problem directly with the alleged perpetrator[,]" even if such a meeting is "on a voluntary basis." (*Id.* ¶ 164 (internal quotation marks omitted).) Shank alleges that as a result of this coerced meeting, she was further traumatized and in fact was so terrified by Student One during the meeting that she agreed to lift the no-contact order as a means to placate him. (*Id.* ¶¶ 169–70.)

Due to subsequent run-ins with Student One, Shank requested that the no-contact order be reinstated in 2015. (*Id.* ¶ 176.) Carleton complied. (*Id.)* Student One nevertheless violated the no-contact order. (*Id.* ¶¶ 177–81.) Despite Carleton's statement

that if Student One violated the no-contact order, "he was gone," Student One suffered no consequences. *See* (*id.* ¶¶ 175–81). In large part due to these violations, Shank requested that Student One be prohibited from attending Shank's and Student One's graduation ceremony so that Shank "would not have to face him and could attend the ceremony without fear." (*Id.* ¶ 182.) Carleton did not enforce the no-contact order for the graduation ceremony, and Shank "was too terrified to attend." (*Id.* ¶ 183.)

### 2. Student Two

Shank was assaulted by Student Two in 2013. (*Id.* ¶¶ 188–195.) Approximately two days after being raped by Student Two, Shank met with her SMS advisor (the same SMS advisor she was assigned after being raped by Student One). (*Id.* ¶¶ 196.) At the meeting, she informed her SMS advisor that she wanted to file a formal complaint against Student Two. (*Id.* ¶ 196.) Shank alleges that her SMS advisor cautioned against bringing a formal complaint because Student Two was a senior and would graduate in two months. (*Id.* ¶ 198.) Instead, the SMS advisor suggested that Shank take a medical leave or change majors to a less challenging one to address the emotional stress of the assault. (*Id.* ¶ 200). At no point did Carleton make an effort to remove Student Two from Watson Hall, the dormitory that he shared with Shank. (*Id.* ¶ 208.)

### B. Motion to Dismiss

The Honorable Patrick Schiltz, United States District Judge, granted in part and denied in part Carleton's Motion to Dismiss [Doc. No. 13] Shank's Amended Complaint [Doc. No. 6]. *See* (Jan. 8, 2017 Order, "Schiltz Order" [Doc. No. 41.]) Important to the resolution of the instant motion, Judge Schiltz determined that multiple claims survived

under Rule 12(b)(6) of the Federal Rules of Civil Procedure including: (1) Shank's claim under Title IX with respect to the inadequacy of Carleton's response to Shank's rapes; and (2) Shank's claim for IIED with respect to Carleton's "forced encounter with her rapist." *See* (Schiltz Order at 11–12, 22–23.)

1. **Title IX**

Under Title IX, recipients of federal funds may be liable "for their deliberate indifference to known acts of peer sexual harassment." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Used in this context, "deliberate indifference" is not satisfied by a mere showing of negligence. *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). Instead, "deliberate indifference requires a highly culpable state of mind approaching actual intent" to cause the harm alleged. *Id.* Under this standard, "funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

> Applying this standard, Judge Schiltz concluded that Shank's allegations
>
> that Carleton failed to advise her of her procedural and substantive rights; wrongfully denied her the ability to participate in the adjudicatory hearing against Student One; discouraged her from pursuing a formal complaint against Student Two; took only minimal action against her assailants; *coerced her into a one-on-one meeting with Student One* (who then took the opportunity to pressure her into lifting the only sanction of which she was aware); and did not even enforce the minimal sanctions that it had imposed[,]

6

survived rule 12(b)(6) scrutiny. (Schiltz Order at 12) (emphasis added). Notwithstanding his caveat that these allegations might not survive disposition on summary judgment, Judge Schiltz concluded that Shank plausibly alleged that Carleton was deliberately indifferent because he could not determine "as a matter of law that Carleton's response was not clearly unreasonable" under the applicable Title IX standard. (*Id.*)

### 2. IIED

Under Minnesota law, claims for IIED must establish that "(1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe." *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995). Furthermore, the allegations must demonstrate the defendant "intend[ed] to cause severe emotional distress or proceed[ed] with the knowledge that it is substantially certain, or at least highly probable, that severe emotional distress will occur." *Id.* This requires that the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard v. United Press Int'l., Inc.*, 330 N.W.2d 428, 439 (Minn. 1983) (internal quotation marks omitted).

Judge Schiltz noted that claims for IIED are "sharply limited to cases involving particularly egregious facts." (Schiltz Order at 21 (internal quotation marks omitted).) He nevertheless concluded that the Amended Complaint was sufficient to state a claim for IIED because it "plausibly alleged that Carleton coerced [Shank] into a one-on-one meeting with her assailant, knowing that such a meeting was likely to cause her severe emotional distress." (Schiltz Order at 22.)

### C. Motion to Amend

Shank filed the instant motion and supporting memorandum on August 28, 2018. [Doc. Nos. 64, 66]. Carleton urges this Court to deny Shank's motion because: (1) it is untimely; (2) punitive damages are unavailable for Shank's federal law claims; and (3) Shank has not met the stringent punitive damages standard imposed by Minnesota Statutes § 549.191. *See generally* (Def. Carleton College's Mem. of Law in Opp'n to Pl.'s Mot. to Amend to Add a Claim for Punitive Damages, "Mem. in Opp'n" [Doc. No. 132].) As it relates to timeliness, Carleton asserts that the pretrial Scheduling Order [Doc. No. 52] required all motions to amend the pleadings must be filed on or before August 1, 2017, and that the parties agreed to amend the Scheduling Order, but no modification was made to this deadline. *See* (*id.* at 2–3.); *see also* (Order on Am. Scheduling Order [Doc. No. 61.])

## II. Discussion

### A. Standard of Review

Some recent decisions in this District have departed from past practice and are applying Federal Rules of Civil Procedure 15 instead of Minnesota Statutes § 549.191 when considering motions to add punitive damage claims. *See Rogers v. Mentor Corp.*, 13-cv-1927 (ADM/LIB), 2018 WL 2215519, at * (D. Minn. May 15, 2018) (Rau, Mag. J.) (concluding that Rule 15 of the Federal Rules of Civil Procedure and not Minnesota Statutes § 549.191 controls), *aff'd sub nom. Urbieta v. Mentor Corp.*, 2018 WL 3475484 (July 19, 2018) (Montgomery, J.); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27,

2017) (Noel, Mag. J.); *see also Selective Ins. Co. of S.C. v. Sela*, No. 16-cv-4077 (PJS/SER), 2018 WL 1960450 at *6 (D. Minn. Apr. 28, 2018) (Rau. Mag., J.) (concluding that Rule 15 controls and not Minnesota Statutes § 604.18—a sister statute to § 549.191). *But see* Order Dated Mar. 8, 2018, *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB) (D. Minn.) [Doc. No. 534] (Brisbois, Mag. J.) (finding the court must apply Minn. Stat. § 549.191).

Under Rule 15, a court should "freely give leave" to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a). Minnesota Statutes § 549.191, on the other hand, requires a "one or more affidavits" establishing "prima facie evidence" to support the motion to amend. Naturally, Carleton urges this Court to follow the reasoning of Judge Brisbois and review Shank's claims under the heightened standard. *See* (Mem in Opp'n at 7–8.) Shank urges the application of the Rule 15 standard. *See* (Pl.'s Mem. in Supp. of Mot. Amend to Add a Claim for Punitive Damages ("Mem. in Supp.") at 6-7 [Doc. No. 66].)

Having carefully reviewed the issue and the recent cases, the Court concludes that the proper standard to apply is Rule 15 of the Federal Rules of Civil Procedure and not Minnesota Statutes § 549.191. Specifically, the gatekeeping function that is required under § 549.191 obligates the court to consider evidence in determining the propriety of the motion to amend. But considering evidence "presents a stark contrast to the usual analysis where a federal court need only consider whether the pleading 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Selective*, 2018 WL 1960450, at *7 (alteration in original) (quoting *Iqbal*, 556

9

U.S. at 678). Because Rule 15 "answers the question in dispute," it controls under the circumstances. *Cf. Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

That is not to say that Minnesota law has no bearing; *procedurally*, the Court is required to view the PSAC through the permissive Rule 15 lens, but must nevertheless determine whether it states a plausible claim for punitive damages in light of *substantive* Minnesota law. *See, e.g.*, *Prudential Ins. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (stating that generally "[a] district court sitting in diversity applies the law . . . of the state in which it sits" (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941))); *see also Rogers*, 2018 WL 2215519, at *8. In this case, that substantive Minnesota law is § 549.20. *Rogers*, 2018 WL 2215519, at *8.

While Rule 15 is a permissive standard, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.

*Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

**B.** **Analysis**

Of the relevant considerations that might preclude granting Shank's motion, the only issues addressed to any extent in Carleton's response are timeliness and futility. *Cf. Foman*, 371 U.S. at 182. The Court addresses each in turn.

**1.** **Timeliness**

As noted, the operative Scheduling Order contemplated that all motions to amend be filed on or before August 1, 2017. *See* (Order on Am. Scheduling Order). The instant motion was filed more than a year later, on August 28, 2018. Shank argued at the hearing before the undersigned that the deadline in the scheduling order did not apply to a motion to amend to add a claim for punitive damages for two reasons. First, she argued that although the pretrial scheduling order had only one deadline for motions to amend the pleadings, the minute entry that memorialized the pretrial conference had a separate line for motions to amend the complaint to add claims for punitive damages, and it was left blank. *See* (Mar. 10, 2017 Minute Entry [Doc. No. 45].) Thus, she contends, either there was no deadline in the scheduling order at all for such motions, or the applicable deadline was the October 15, 2018, "catch-all" deadline for all other nondispositive motions. *See* (Order on Am. Scheduling Order at 2).

Second, Shank argues the August 1, 2017, deadline for motions to amend the pleadings could not possibly have allowed for adequate discovery to determine whether

11

there was a basis for such a motion, particularly if (as was the prevailing view at the time) she had to comply with the Minnesota Statutes § 549.191 requirement that evidence be submitted to support the claim. Shank notes that fact discovery was not completed until well into 2018, with depositions of key Carleton witnesses being conducted in May, and that it took additional time thereafter to identify sufficient facts to support her prime facie showing under § 549.191, particularly as to whether Carleton acted with the requisite degree of intentionality to demonstrate deliberate indifference.

The Court is not persuaded by Shank's argument that Judge Noel's scheduling order contemplated that the October 15, 2018, deadline for nondispositive motions, rather than the August 1, 2017, deadline for motions to amend the pleadings, applied to motions to amend the pleadings to add claims for punitive damages. First, it is much more consistent with the language of the scheduling order that the deadline for motions to amend includes *all* motions to amend in the absence of an explicit exception made for a subset of such motions. Second, the deadline for dispositive motions to have been filed, fully briefed, *and heard* was set for December 15, 2018, just eight weeks after the deadline for nondispositive motions, scarcely allowing adequate time for a motion to add punitive damages to be briefed, argued, and decided and then—if granted—incorporated into the motion for summary judgment that was certain to be made.[4] As a result, the

---

[4] Indeed, the inadequacy of that time interval was borne out by the fact that the dispositive motion hearing scheduled before Judge Schiltz had to be cancelled and the dispositive motion deadline stayed in view of the pendency of this motion. *See* (Sept. 14, 2018 Order [Doc. No. 215.])

12

Court concludes that the operative deadline for this motion was August 1, 2017, and therefore Shank's motion was not timely.

That said, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show [good] cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b)). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). The first question, then, is whether Shank was diligent under the circumstances. Arguably, under a Rule 15 approach, Shank could have brought the instant motion much earlier in the pretrial progression; many of the factual allegations on which she now relies appear in her Amended Complaint [Doc. No. 6], filed in 2016. But despite the Court's conclusion herein that Rule 15 controls the resolution of the motion, it cannot fault Shank for believing in good faith that she needed to gather more evidence, some of which she did not have until May 2018, to comply with Minnesota Statutes § 549.191, which until recently was the prevailing approach in this District. *See, e.g., Leiendecker v. Asian Women United of Mn.*, 895 N.W.2d 623, 637 (Minn. 2017) ("The district court may not allow an amendment where the motion and supporting affidavits do not reasonably allow a conclusion that *clear and convincing* evidence will establish the defendant acted with willful indifference.") (internal quotation marks omitted) (emphasis added). Given the evidentiary burden she thought she faced, the timeframe in which she obtained some of the information, and what the Court concludes was a good faith, albeit mistaken, interpretation of the scheduling order, the Court finds nothing to suggest that Shank was
13

dilatory or otherwise evinced a lack of diligence in bringing her instant motion. As a result, the Court concludes that good cause exists to excuse Shank's untimely filing.

The analysis does not end there, of course, as the Court must also address whether the delay will cause prejudice to the opposing party. *Foman*, 371 U.S. at 182; *see also Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown."). Carleton contends that it will be prejudiced because fact discovery has already closed and it might have conducted additional discovery if a claim for punitive damages had been timely asserted. While Carleton did not elaborate on precisely what additional discovery it requires, the Court would be receptive to reopening discovery and further deferring the dispositive motion deadline for a brief time if Carleton can make a more specific showing on this subject. In any event, the Court is not persuaded that Carleton has been significantly prejudiced, if at all, by the belated motion. Thus, the Court will not deny Shank's motion on grounds of timeliness.

### 2. Futility

While the process established by Minnesota Statutes § 549.191 specifically contemplates consideration of evidence proffered outside the pleadings, the Federal Rules of Civil Procedure do not. On the contrary, the Court cannot consider matters outside the pleadings when determining whether a complaint adequately states a claim upon which relief may be granted; therefore, it must base its determination of this motion on a four-corners analysis of the PSAC. *See Arias v. Am. Family Mut. Ins.*, No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (Graham, Mag. J.)

14

(stating "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15).

At the hearing before the undersigned, Shank confirmed that she was seeking to amend her complaint to pursue punitive damages for her state law claims only, i.e., her claims for negligence and for IIED. *See* (Schiltz Order at 14–17, 21–22.)

Under Minnesota law, punitive damages may be awarded "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20 subdiv 1(a). The statute goes on to explain that

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceed to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceed to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20 subdiv 1 (b). Thus, a "'mere showing of negligence is not sufficient' to sustain a claim of punitive damages" under Minnesota law. *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003) (quoting *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 268 (Minn. 1992)); *see also Ulrich v. City of Crosby*, 848 F. Supp. 861, 868 (D. Minn. 1994) (Erickson, Mag. J.) (stating "the mere existence of negligence or of gross negligence does not rise to the level of willful indifference so as to warrant a claim for punitive damage").

Here, the Court is not working with a *tabula rasa* in evaluating whether the

15

conduct alleged meets this bar. First, Judge Schiltz has already determined that the operative complaint was sufficient to state a claim under Title IX, which requires that for liability to attach, there must be not just mere negligence but deliberate indifference. *See Davis*, 526 U.S. at 633; *Choate*, 7 F.3d at 1374. Likewise, for Shank to prevail on her IIED claim, she must plead facts sufficient to show "intentional or reckless" conduct that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *See K.A.C.*, 527 N.W.2d at 560; *Hubbard*, 330 N.W.2d at 439. In analyzing those claims under Rule 12(b)(6), Judge Schiltz concluded that the allegation that Shank was coerced into a one-on-one meeting with Student One plausibly stated a claim for relief both under Title IX and under Minnesota law for IIED. (Schiltz Order at 12, 21–23.) Moreover, while Shank does not pursue punitive damages for her Title IX claim, some of the conduct that Judge Schiltz found adequate to sustain that claim also underlies her IIED claim—specifically the manner in which Carlton responded to the assaults on Shank. *See, e.g.*, (Schiltz Order at 12 and 21-22.) Thus, Judge Schiltz's analysis of Shank's Title IX claims is illuminating because the deliberate indifference standard under Title IX closely approximates the punitive damages standard under Minnesota law. *Compare Davis*, 526 U.S. at 633 (requiring a showing of deliberate indifference to the acts of harassment), *with* Minn. Stat. § 549.20; *see also* (Schiltz Order at 9–12 (applying the Title IX standard).) That is, if Shank's allegations plausibly claim deliberate indifference by Carleton with respect to how it handled Shank's assaults under Title IX, they are likely also sufficient to support a plausible punitive damages claim under Shank's IIED allegations concerning the same handling of Shank's assaults.

Shank alleges in her PSAC that Carleton coerced her into a meeting with Student One in October of 2012 despite guidance in April of 2011 from the Office of Civil Rights of the United States Department of Education that stated in part, "it is improper for a student who complains of harassment (this includes sexual assaults and rape) to be required to work out the problem directly with the alleged perpetrator[,]" even if such a meeting is "on a voluntary basis." (PSAC ¶¶ 164, 166 (internal quotation marks omitted).) Furthermore, Shank alleges that the meeting had both disastrous and predictable results, causing her harm. *See* (*id.* ¶¶ 167–71.)

Judge Schiltz concluded that these allegations—which for purposes of this motion, just as the motion before Judge Schiltz, must be assumed true—stated a plausible claim "that Carleton coerced her into a one-on-one meeting with her assailant, knowing that such a meeting was likely to cause her severe emotional distress" because the encounter left her traumatized and stripped her of her only means to protect herself on campus. *See* (Schiltz Order at 22–23); *see also* (Schiltz Order at 12 (concluding that coercing Shank into the one-on-one meeting with Student One plausibly alleged deliberate indifference under Title IX).) That is, Shank has alleged "facts that create[d] a high probability of injury" to her rights or safety and that Carleton "deliberately proceed[ed] to act with indifference to the high probability of injury to" her rights or safety. *See* Minn. Stat. § 549.20.

In sum, because the Court must assume that Shank's factual allegations are true and must draw all reasonable inferences in her favor, and given the conclusions already drawn by Judge Schiltz with regard to the adequacy of the existing Title IX and IIED

17

claims, the Court is satisfied that Shank's PSAC alleges a plausible claim "that the acts of the defendant show[ed] deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20. *See* (Schiltz Order at 9–12, 20–23); *see also M.H. v. Caritas Fam. Servs.*, 488 N.W.2d 282, 289–90 (Minn. 1992) (suggesting that the same "allegations of outrageous and willful misconduct" may support both claims for IIED and punitive damages).

That is not to say, however, that Shank will ultimately be entitled to relief on the merits. As stated elsewhere, the Court may not conduct an evidentiary analysis of Shank's allegations in analyzing the propriety of her Motion to Amend. *See Arias*, 2013 WL 12145854, at *2. Moreover, it is not at all clear that the evidence, when adduced, would be sufficient to meet the demanding "clear and convincing" standard established by § 549.20. But those are issues properly addressed in the context of the upcoming motions for summary judgment and not on this motion.[5]

## III. Conclusion

Because Shank demonstrated good cause for failing to timely file her motion, because any prejudice to Carleton can be addressed, if necessary, through limited additional discovery, and because Shank plausibly alleges Carleton deliberately disregarded her rights or safety under Minnesota Statutes § 549.20, Shank's motion is granted.

---

[5] Even if the Court were inclined to agree with Carleton that the instant motion could be dispensed with under the standard provided by Rule 56, *see* (Mem. in Opp'n at 31–32), in view of the stage of the case and the imminence of dispositive motion practice, considerations of efficiency both for the Court and the parties also militate against deciding the fate of a single claim in this limited setting.

Accordingly, **IT IS HEREBY ORDERED** that

1) Plaintiff Elizabeth M. Shank's Motion to Amend to Add a Claim for Punitive Damages [Doc. No. 64] is **GRANTED**.

2) Shank must file her PSAC on or before seven (7) days from the date of this Order.

3) Carleton must promptly meet and confer with Shank concerning what, if any, limited additional discovery Carleton believes it now requires in view of the claim for punitive damages, how much time is needed to complete that discovery, and a new deadline by which dispositive motions must be *filed*. The parties must e-file a joint letter with the results of that meet-and-confer on or before fourteen (14) days from the date of this Order. If the parties do not reach agreement, their respective positions on any matters in dispute should be set forth in the letter. The Court will thereafter enter an amended scheduling order.

Dated: October 15, 2018         s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge