UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elizabeth M. Shank,<br><br>    Plaintiff,<br><br>v.<br><br>Carleton College,<br><br>    Defendant. | File No. 16-cv-01154 (ECT/HB)<br><br>**MEMORANDUM OPINION AND ORDER** |

On October 15, 2018, Magistrate Judge Hildy Bowbeer issued an order addressing several issues, including granting the motion of Plaintiff Elizabeth M. Shank ("Shank") to amend her complaint to allege punitive damages in connection with her state-law claims. Defendant Carleton College ("Carleton") objects only to the part of Judge Bowbeer's order finding that "good cause" existed under Fed. R. Civ. P. 16 to amend the scheduling order to permit consideration of Shank's late motion to amend. Having carefully reviewed the underlying order, the parties' arguments, and the applicable law, the Court will affirm Judge Bowbeer's finding of good cause and, as a result, her order granting Shank's motion to amend.

I

The background facts are set forth more fully in court orders dated January 9, 2017 [ECF No. 41] and October 15, 2018 [ECF No. 221], and will not be recited at length here. In short, Shank brought this action challenging Carleton's alleged mishandling of two on-campus rapes. *See* First Am. Compl. ¶ 1 [ECF No. 6]. Shank originally sought punitive

damages only as to her *federal* claim under Title IX, expressly noting in her complaint that "[t]he law of this District precludes the initial pleading of a claim of punitive damages *as to state law claims*."[1] *Id.* ¶ n, 49 n.3. Approximately two years later, and after the close of discovery, she filed a motion to amend her complaint to add a claim for punitive damages as to her *state-law* claims. *See* Mot. to Amend [ECF No. 64]; Proposed Second Am. Compl. ¶¶ 263–65, n [ECF No. 72-3].

Shank's motion to amend was complicated by two issues: (1) the timeliness of her motion, in view of the scheduling order, and (2) a dispute about whether Fed. R. Civ. P. 15 or Minn. Stat. § 549.191 provided the applicable legal standard for considering the motion. Judge Bowbeer found that Shank's motion was untimely. ECF No. 221 ("Order") at 13. Although the scheduling order from the initial pretrial conference had left a blank for "[m]otions seeking to add claim for punitive damages," ECF No. 45 at 3, Judge Bowbeer concluded that the general deadline of August 1, 2017, for "[m]otions seeking to amend pleadings," *id.*, was controlling, making Shank's motion over a year late, Order at 12–13. And although the law in the District had long been that Fed. R. Civ. P. 15(a)(2)'s "freely give leave" standard yields to Minn. Stat. § 549.191's "prima facie evidence" standard, Judge Bowbeer joined a recent intra-District trend and concluded the opposite. *See* Order at 8–10. But neither of these rulings is at issue in this appeal. *See* Def.'s Obj. at 1–2 [ECF No. 229].

---

[1] Shank also expressly acknowledged that "there is no controlling authority in this District bearing on the availability of punitive damages under Title IX," and that she was making "an argument for extending, modifying, or reversing existing law or for establishing new law." First Am. Compl. at 49 n.3 [ECF No. 6].

2

The sole issue that Carleton appeals is Judge Bowbeer's threshold determination that "good cause" existed under Rule 16 to consider Shank's belated motion to amend under Rule 15. *See id.* Having found good cause, Judge Bowbeer then entertained the merits of Shank's motion to amend. She concluded that the court was "not working with a *tabula rasa*" because Judge Schiltz had already concluded the complaint stated a claim for "deliberate indifference" under Title IX and "intentional or reckless" conduct for intentional infliction of emotional distress. Order at 15–16. The court held that these standards "closely approximate[] the punitive damages standard under Minnesota law" and that Shank had therefore "allege[d] a plausible claim 'that the acts of the defendant show[ed] deliberate disregard for the rights or safety of others.'" *Id.* at 16–18 (second alternation in original) (quoting Minn. Stat. § 549.20). Accordingly, Judge Bowbeer granted Shank's motion to amend to add a claim for punitive damages as to her state-law claims. *Id.* at 19.

II

A

Motions to amend for punitive damages are nondispositive motions, despite their potentially dispositive implications. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 7.1(b)(4)(A)(i) (providing that "[n]ondispositive motions covered by this subsection include . . . motions to amend pleadings"); *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005) (referring to a motion for leave to amend the complaint as a "nondispositive pretrial motion"); *Olson v. Brott*, No. 09-cv-790 (JNE/JJG), 2009 WL 4912135, at *3 (D. Minn. Dec. 11, 2009) (rejecting plaintiff's argument that "the

3

denial of his motion to amend . . . constituted a judgment on the merits" and was therefore dispositive, such that "the magistrate judge lacked jurisdiction to issue an order subject to a 'clearly erroneous' or 'contrary to law' standard of review" (citations omitted)). As a result, Judge Bowbeer's decision on the motion to amend will be reversed only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Local Rule 72.2(b)(3).

This standard of review "is extremely deferential." *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013). "A ruling is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. A decision is contrary to law when a court fails to apply or misapplies relevant statutes, case law or rules of procedure." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (citations and internal quotation marks omitted). "If the magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though had it been sitting as the trier of fact, it would have weighed the evidence differently." *Meyer v. Haeg*, No. 15-cv-2564 (SRN/HB), 2016 WL 29257, at *3 (D. Minn. Jan. 4, 2016) (reviewing decision to grant leave to amend).

B

Shank's motion to amend implicates two federal rules and two state statutes: Fed. R. Civ. P. 15 and 16, and Minn. Stat. §§ 549.191 and 549.20. But only Rule 16 and its good-cause standard are directly at issue on appeal. A brief discussion of the interaction between Rules 15 and 16 is useful.

Rule 15 requires the court to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Even though this is a liberal standard, parties do not have an absolute right to amend for any claim at any time. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (citation and internal quotation marks omitted).

But when a Rule 15 motion is brought after the court-ordered deadline, the court must conduct a "good cause" analysis under Rule 16 to determine if amendment of the scheduling order is appropriate.[2] *See Sherman*, 532 F.3d at 716; *see also TCS Holdings, Inc. v. OnVoy, Inc.*, No. 07-cv-1200 (DWF/AJB), 2008 WL 11347408, at *2 (describing how the movant must show good cause to "justify modification of the scheduling order, thereby re-establishing the timeliness of the amendment motion itself"). This is a more stringent standard than in Rule 15. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (calling the good-cause standard "less forgiving"). "The primary measure of

---

[2] Rule 16 does not distinguish between "good cause" and "excusable neglect" in the way Rule 6 does. *Compare* Fed. R. Civ. P. 16(b)(4), *with* Fed. R. Civ. P. 6(b)(1). Arguably the excusable-neglect standard should apply when a party seeks to modify the scheduling order after the deadline has passed. *See* Fed. R. Civ. P. 6(b)(1)(B) (requiring a showing of good cause and excusable neglect to extend an expired deadline); *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 n.1 (D. Minn. Aug. 4, 2017) (noting that "a somewhat different analysis may be warranted for deadlines that have already run"). But the plain text of Rule 16 does not make this distinction. And in *Sherman*, the Eighth Circuit was explicit that the "good-cause standard governs when a party seeks leave to amend . . . outside of the time period established by a scheduling order." 532 F.3d at 716. Accordingly, the Court considers this appeal in light of the good-cause standard.

good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman*, 532 F.3d at 716–17 (citation and internal quotation marks omitted)). If the court is satisfied that the movant was diligent, it will also generally consider possible prejudice to the nonmovant. *See id.* at 717.

There is certainly overlap between the factors bearing on the Rule 15 and Rule 16 inquiries, but these are distinct inquiries that serve distinct purposes. Rule 16(b)(4) must be addressed first, as it resolves whether the *scheduling order* should be *modified*. If the court finds good cause under Rule 16, then the court proceeds to the Rule 15 inquiry, which resolves whether the *complaint* can be *amended*. In other words, Rule 16 opens the door to Rule 15.

### III

The first and only order of business in this appeal is the good-cause showing required by Rule 16.[3] This, like other scheduling-order matters, falls within the magistrate judge's broad discretion. As Chief Judge John Tunheim observed in *Portz v. St. Cloud State University*:

> Eighth Circuit caselaw reflects the importance of diligence to the good cause analysis, but this caselaw does not go so far as to state that diligence is required for the district court to find good cause. *See*, *e.g.*, *Harris v. FedEX Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) . . . .

---

[3] Neither Carleton nor Shank challenges Judge Bowbeer's findings and conclusions that the motion to amend was untimely; that Rule 15, not Minn. Stat. § 549.191, controls; and that amendment is not futile or prejudicial. *See* Def.'s Obj. at 2; Pl.'s Resp. at 2 [ECF No. 233].

> Therefore, while diligence is the primary factor for assessing good cause, nothing limits the Court's "broad discretion in establishing and enforcing the deadlines" in the scheduling order. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) . . . . Moreover, there is not a clear test for when a party is diligent enough to establish good cause.

No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3–4 (D. Minn. Aug. 4, 2017). Here, Judge Bowbeer found at least four factors amounted to good cause: (1) "the evidentiary burden [Shank] thought she faced," (2) "the timeframe in which she obtained some of the information," (3) Shank's counsel's "good faith, albeit mistaken, interpretation of the scheduling order," and (4) an absence of evidence that "Shank was dilatory or otherwise . . . lack[ed] . . . diligence." Order at 13–14.

Carleton contends that Judge Bowbeer's order is contrary to law because "this Court has repeatedly declined to find good cause under Rule 16 where, as here, discovery occurred after the motion to amend deadline but the movant had the majority of the required information earlier in the litigation." Def.'s Obj. at 3–4 (citing *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2017 WL 4583319, at *10–11 (D. Minn. Jan. 17, 2017); *Moldex Metric, Inc. v. 3M Co.*, No. 14-cv-1821 (JNE/FLN), 2016 WL 845264, at *2 (D. Minn. Mar. 4, 2016); *Promotional Mktg. Insights, Inc. v. Affiliated Comput. Servs., Inc.*, No. 11-cv-2795 (PJS/AJB), 2013 WL 4747261, at *4–5 (D. Minn. July 19, 2013); *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2013 WL 12141434, at *2 (D. Minn. May 15, 2013); *Luigino's, Inc. v. Pezrow Cos.*, 178 F.R.D. 523, 525 (D. Minn. 1998)).

The line of cases upon which Carleton relies, which can be traced back to the *Aviva* case, is distinguishable. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,

7

No. 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." (citations omitted)). In many of those cases, dilatory plaintiffs "offer[ed] no justification for [their] extreme dereliction" of deadlines. *Luigino's, Inc.*, 178 F.R.D. at 525–26; *see, e.g.*, *Aviva*, 2010 WL 4193076, at *7 ("[Plaintiff] made neither argument nor a showing that it had complied with this Court's Pretrial Scheduling Order or had good cause for seeking to amend . . . well after the deadline for bringing such a motion."). Here, Shank has offered an explanation—several reasonable and persuasive ones, at that.

None of the cases cited by Carleton were decided after the intra-District split, and none involved the same ambiguous scheduling order present in this case. It is true that the *Aviva* line of cases reflects a hard line being taken in specific cases against plaintiffs who delay in bringing motions to amend for punitive damages—and certainly it was reasonable for Carleton to take the position that it did on this issue—but these cases do not create a bright-line rule that makes Judge Bowbeer's decision clearly contrary to law.

Moreover, there is Eighth Circuit precedent suggesting that a "change in the law" may form the basis for good cause. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (finding no good cause where the movant did "not allege[] a change in the law, the discovery of new facts, or some other change in circumstances" to justify belated filing (citing *Sherman*, 532 F.3d at 718)); *see also IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 523–24 (D. Minn. 2018). The state of the law in the District regarding Rule 15 and Minn. Stat. § 549.191 was in flux around the time of the original

motion-to-amend deadline, and it continued to be in flux leading up to Shank's filing of her motion to amend. This unsettled, changing legal landscape provided a basis for Shank's reasonable belief that she needed "clear and convincing" evidence before filing her motion. *See* Minn. Stat. § 549.20, subd. 1(a). It is understandable that attorneys would err on the side of more, not less, evidence, particularly given that some judges still require a showing of "prima facie evidence" under Minn. Stat. § 549.191. *See* Order at 6–12, *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB) (D. Minn. Mar. 8, 2018), ECF No. 534.

Finally, Shank's belated motion does not reflect "carelessness," "neglect," or a "litany of lame excuses," which would justify denying her motion to amend. *Cf. Archer Daniels Midland Co. v. Aon Risk Servs. Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999). Instead, the record reveals Shank's incorrect but good-faith interpretation of the scheduling order and an understandable assumption that she needed clear and convincing evidence to accompany her motion. There is nothing here to suggest that a lawyer or party is inventing excuses and applying them retroactively. The ambiguous scheduling order and changing interpretation of the interplay between Rule 15 and Minn. Stat. § 549.191 created a "perfect storm" that amounts to good cause for Shank's belated motion to amend.[4] Like Judge

---

[4] Carleton appears to argue that if Shank's conduct satisfies Fed. R. Civ. P. 16(b)(4), then deadlines don't matter and the good-cause standard is a farce. *See* Def.'s Obj. at 5, 9 (citing *Luigino's, Inc.*, 178 F.R.D. at 525–26 ("A scheduling order is an important tool in controlling litigation . . . . [and] is not a frivolous piece of paper . . . . If an amendment of the pleadings can be considered timely under these circumstances, then the good cause showing of Rule 16(b) is an apparition . . . .")). Motions to amend involving punitive damages and state substantive law are distinguishable from more run-of-the-mill motions to amend, and this case also included unusual complications of an ambiguous scheduling

Bowbeer, the Court "is persuaded that [Shank] has not intentionally or carelessly neglected the mandates of the Pretrial Scheduling Order" and rejects Carleton's argument "that the proposed claim could have been asserted at an earlier time." *TCS Holdings, Inc.*, 2008 WL 11347408, at *2 (D. Minn. May 16, 2008); *see* Def.'s Obj. at 5–9. Judge Bowbeer's order granting leave to amend therefore was not clearly erroneous or contrary to law.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT** Carleton's Objection [ECF No. 229] is **OVERRULED** and Magistrate Judge Bowbeer's October 15, 2018 Order [ECF No. 221] is **AFFIRMED.**

Dated: January 7, 2019                    s/ Eric C. Tostrud
                                                                Eric C. Tostrud
                                                                United States District Court

---

order and a shift in the law. A finding of good cause on these unique facts does not give plaintiffs carte blanche to disregard scheduling orders in future cases.